[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-11764

_____

JANE DOE #1,

Plaintiff-Appellant,

*versus*

RED ROOF INNS, INC., et al.,

Defendants,

CHOICE HOTELS INTERNATIONAL, INC.,
WYNDHAM HOTELS & RESORTS INC,
MICROTEL INNS AND SUITES FRANCHISING, INC.,

Defendants-Appellees.

2                    Opinion of the Court                    20-11764

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-03840-WMR

_____

_____

No. 20-11769

_____

JANE DOE #2,

Plaintiff-Appellant,

*versus*

RED ROOF INNS, INC., et al.,

Defendants,

CHOICE HOTELS INTERNATIONAL, INC.,
WYNDHAM HOTELS & RESORTS INC,
MICROTEL INNS AND SUITES FRANCHISING, INC.,
VARAHI HOTEL, LLC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-03841-WMR

_____


_____

No. 20-11771

_____

JANE DOE #3,

                                                Plaintiff-Appellant,

*versus*

RED ROOF INNS, INC., et al.,


                                                Defendants,


WYNDHAM HOTELS & RESORTS INC,
MICROTEL INNS AND SUITES FRANCHISING, INC.,
ESA MANAGEMENT, LLC,
ESA P PORTFOLIO, LLC,
EXTENDED STAY AMERICA, INC.,
ESA P PORTFOLIO OPERATING LESSEE, LLC,

4                    Opinion of the Court                    20-11764

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-03843-WMR

_____

_____

No. 20-11770

_____

JANE DOE #4,

Plaintiff-Appellant,

*versus*

RED ROOF INNS, INC., et al.,

Defendants,

CHOICE HOTELS INTERNATIONAL, INC.,
WYNDHAM HOTELS & RESORTS INC,
MICROTEL INNS AND SUITES FRANCHISING, INC.,

Defendants-Appellees.

———————————

Appeals from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-03845-WMR

———————————

Before JORDAN, BRASHER, and ANDERSON, Circuit Judges.

BRASHER, Circuit Judge:

Four sex trafficking victims, proceeding as Jane Does, filed complaints against numerous defendants within the hotel industry for violations of the Trafficking Victims Protection Reauthorization Act, specifically 18 U.S.C. § 1595(a), and Georgia state law. Under the TVPRA, a trafficking victim may sue a sex-trafficking perpetrator and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the Trafficking Victims Protection Act]." 18 U.S.C. § 1595(a). The Does alleged that they were trafficked in Atlanta-area hotels and sued the hotel operators, employees, owners, franchisees, and franchisors of those hotels.

The district court held that the Does failed to plausibly allege claims against three hotel franchisors: Choice Hotels International, Inc., Wyndham Hotels & Resorts, Inc., and Microtel Inn & Suites

Franchising, Inc. It dismissed their amended complaints as to those franchisors. And the Does appealed.

To resolve this appeal, we must answer two questions. First, we must decide a question of first impression about the elements of a TVPRA beneficiary claim. We hold that Section 1595(a) should be applied according to its plain meaning: that is, to state a claim for beneficiary liability under the TVPRA, a plaintiff must plausibly allege that the defendant (1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff. Second, we must determine whether the Does have plausibly alleged facts that satisfy those elements against each of the franchisors. Here, we conclude that the Does have failed to meet that burden as to the three franchisors at issue on appeal. We likewise conclude that, as to these three defendants, the Does did not state a plausible claim under Georgia state law. Accordingly, we affirm.

## I.    BACKGROUND

### A.    *Factual Background*

Four Jane Does filed nearly identical amended complaints against individuals and businesses involved in the hotel industry, including individual hotels, owners, management, and franchisors. The Does alleged that they were "victims of the conspicuous and

open sex trafficking that occurred at Defendants' hotels." They pleaded facts about hotel sex trafficking generally and sex trafficking in the Atlanta area, specifically.

Among the defendants are the three franchisors relevant to this appeal: Choice Hotels International, Inc., Wyndham Hotels & Resorts, Inc., and Microtel Inn & Suites Franchising, Inc. Choice is a franchisor that licenses its brand to the Suburban Extended Stay in Chamblee, Georgia. Wyndham is the parent company of MISF and the franchisor that licenses its brand to the Microtel Inn & Suites in Atlanta, Georgia. MISF enters into franchise agreements with Microtel Inn & Suites franchisees on Wyndham's behalf. The Does alleged that these franchisors violated the TVPRA, 18 U.S.C. § 1595(a); the Georgia Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. §§ 16-14-4(a), (c); and acted negligently.

The Does alleged that these two hotels—the Suburban Extended Stay in Chamblee and the Microtel Inn & Suites in Atlanta—"accommodate[d], facilitate[d], and participate[d] in the sex trafficking of women, men, and children in Atlanta"—including their own sex trafficking. The Does alleged that they were "forced to engage in commercial sex acts at [these] hotels by various sex traffickers." And the money that their traffickers made from those ventures was "used to pay . . . for their hotel rooms and other services in furtherance of the sex trafficking ventures occurring at [these] hotels." Some of the hotels' employees worked with the traffickers by, for example, acting "as lookouts, notifying traffickers

if police were present." Traffickers paid these employees in cash or drugs.

Does 1, 2, and 4 alleged that there was a "well-established sex trafficking venture" at the Suburban Extended Stay licensed by Choice Hotels in Chamblee, Georgia. That alleged venture was comprised of "traffickers, the hotel's employees, management, owners, and franchisor, as well as others involved in the sex trafficking of victims at that hotel." Many of the local hotel's employees assisted and facilitated the Does' trafficking and were paid by the traffickers to work as lookouts. While being trafficked at the Suburban Extended Stay, the Does "exhibited numerous well-known and visible signs of a sex trafficking victim." And the state of the hotel rooms used for the trafficking and the constant flow of men in and out of rooms suggested that sex trafficking was occurring at the hotel.

Three Does alleged that Choice "controlled the policies and standards applicable to and enforced (or not enforced) at the Suburban Extended Stay (Chamblee), as well as the training of its managers and employees." Choice also "sent inspectors to examine this hotel, at times anonymously, and the ongoing sex trafficking activity would have been apparent to those inspectors." Further, the Does alleged upon information and belief that Choice monitored online reviews of the hotel, which "reported widespread prostitution and crime occurring at the hotel." The Does also alleged that customers complained to Choice about prostitution, commercial sex trafficking, and other criminal activity at the hotel. The police

responded to prostitution calls at the hotel on numerous occasions, and nonprofit and religious groups regularly visited "to provide food and rescue information to the sex trafficking victims they en-counter[ed] at the hotel."

As for Wyndham and MISF, all four Does alleged that there was also a "well-established sex trafficking venture at the Microtel" in Atlanta that was licensed by Wyndham and MISF. The Does al-lege that the local hotel's employees participated in, assisted, and facilitated the Does' trafficking at the Microtel by working as look-outs for traffickers and allowing them to use the lobby computer to advertise for sex with Does 1 and 2. And during the years that Doe 4 was trafficked at the Microtel, "a single sex trafficker com-pletely controlled the third floor of the hotel." That trafficker also used the banquet room to take photographs of victims to use for online advertisements. Wyndham and MISF "controlled the poli-cies and standards applicable to and enforced (or not enforced) at the Microtel (Atlanta), as well as the training of its managers and employees." "Wyndham and [MISF]—the hotel's franchisor[s]—sent inspectors to examine this hotel, at times anonymously, and the ongoing sex trafficking activity would have been apparent to those inspectors."

The Does alleged that the three franchisors profited from this activity. In exchange for allowing the Microtel to use its brand, Wyndham received "royalty and other fees based on a percentage of their gross room revenue." The other franchisors also earned a percentage of the revenue generated from the daily rental of hotel

rooms, including the rental of rooms used to "harbor, exploit, and sell" each of the Does. And the franchisors "intentionally turn[ed] a blind eye to safety and security issues at their hotels . . . even when [they] knew or should have known part of [their] profits were derived from sex trafficking ventures." They "should have known" about those sex trafficking ventures, according to the Does, because sex trafficking occurred openly at the hotels, and the franchisors routinely "investigate individual hotel locations and take remedial action" when revenue is down.

### B.    *Procedural Background*

The Does asserted a "standalone" civil beneficiary TVPRA claim against the franchisors and alleged that they knowingly benefitted from participation in a sex trafficking venture that they "knew or should have known" violated the TVPRA. They also asserted Georgia RICO claims predicated on violations of Section 1591 and Georgia state law. Finally, they alleged negligence based on the franchisors' "supervisory control and authority over employees, contractors and others" at the hotels, their failure to keep the hotels safe, and their failure to "adequately and properly protect their invitees, including [the Does], in breach of their duty of care." Soon after filing the amended complaint, Doe 3 voluntarily dismissed all claims against Choice without prejudice.

Choice, Wyndham, and MISF moved to dismiss each of the Does' amended complaints against them for failure to state a claim. Choice alternatively moved to strike certain allegations from Does

1, 2, and 4's amended complaints as "impertinent and salacious." The district court granted the motions to dismiss as to all claims against Choice, Wyndham, and MISF without prejudice in nearly identical orders in each case. In those orders, the district court also granted Choice's motion to strike the disputed language from Does 1, 2, and 4's amended complaints and *sua sponte* struck the same material from Doe 3's amended complaint.

The Does then moved for entry of judgment in favor of Choice (in all cases except for the third Doe's case), Wyndham, and MISF under Federal Rule of Civil Procedure 54(b) and for interlocutory review under 28 U.S.C. § 1292(b). They argued that the district court's order dismissing Wyndham, MISF, and Choice was a final judgment under Rule 54(b) and there was no just reason for delay because (1) the immediate resolution of an appeal would resolve issues in all four interrelated Doe actions, streamlining the litigation; (2) there would be a risk of duplicative discovery and trials without an immediate appeal, and an immediate appeal could serve to limit the scope of discovery; (3) the cases were still in the early stages of discovery, so duplicative discovery could best be avoided now; and (4) COVID-19's impact on the defendants' operations could diminish the Does' ability to recover later on. The Does also argued that the question presented by the dismissal order, how to interpret 18 U.S.C. § 1595(a)'s knowledge requirement, satisfied the Section 1292(b) factors for interlocutory review. No defendant opposed the motion.

The district court granted the franchisors' motions for Rule 54(b) certification and interlocutory review under Section 1292(b) and stayed discovery pending the anticipated appeals. The court later amended the entry of final judgment to dismiss Choice, Wyndham, and MISF with prejudice at the Does' request and after they waived the right to later add the defendants if unsuccessful on appeal.

Each Doe timely appealed the district court's amended Rule 54(b) judgment and, in the alternative, filed a petition for permission to appeal under Section 1292(b).

## II.    JURISDICTION

We must first satisfy ourselves that we have jurisdiction over this appeal. *See Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1297 (11th Cir. 1999). The Does argue that we have jurisdiction under both 28 U.S.C. § 1291 and 28 U.S.C. § 1292. We conclude that jurisdiction is proper under 28 U.S.C. § 1291 because the district court properly directed entry of final judgment as to the franchisor defendants under Rule 54(b). We therefore do not reach the question of whether jurisdiction is proper under Section 1292(b).

"A district court must follow a two-step analysis in determining whether a partial final judgment may properly be certified under Rule 54(b)." *Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 777 (11th Cir. 2007). The court must determine (1) whether "its final judgment is, in fact, both 'final' and a 'judgment'"; and (2) whether there is "just reason for delay" in certifying

the order as immediately appealable. *Id.* An order is "final" if it "disposes entirely of a separable claim or dismisses a party entirely." *In re Se. Banking Corp.*, 69 F.3d 1539, 1547 (11th Cir. 1995). It is a "judgment" if "it is a decision upon a cognizable claim for relief." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980). When determining whether there is no just reason for delay, the district court should consider "judicial administrative interests—including the historic federal policy against piecemeal appeals—and the equities involved." *Lloyd Noland Found.*, 483 F.3d at 778 (cleaned up). This Court reviews the first step of the district court's analysis— whether the order constitutes a final judgment—*de novo*. *Id.* at 778 & n.5. We review whether there was no "just reason for delay" only for abuse of discretion. *Id.* at 778 n.5.

First, the district court's orders granting the motions to dismiss filed by Choice, Wyndham, and MISF were "final judgments" for purposes of Rule 54(b). Those orders dismissed Choice, Wyndham, and MISF from the cases entirely. *See In re Se. Banking Corp.*, 69 F.3d at 1547. The court initially dismissed the franchisors without prejudice and reserved the Does' rights to add them back later if newly discovered evidence warranted their inclusion. Even with this reservation of right, that order was still an "ultimate disposition" of the claims against those parties. *See Lloyd Noland Found.*, 483 F.3d at 777. The district court later amended its dismissal of the franchisors to be with prejudice after the Does stipulated that they would rest on their original allegations against the franchisors and waived their right to add them to the case later should their appeals

fail. Accordingly, the district court did not err in concluding that its dismissals of the franchisors were "final judgments" for purposes of Rule 54(b).

Second, the district court did not abuse its discretion in determining that there was no just reason to delay this appeal. This Court has stated that "limitation of piecemeal appeals [is] an essential purpose served by postponing final disposition" of claims that a party wishes to appeal. *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 168 (11th Cir. 1997). We have also cautioned that "[a]bsent special circumstances . . . the district court's preference for pretrial appellate review of its dismissal decisions constitutes an improper basis for issuance of a partial final judgment" under Rule 54(b). *Id.* at 168.

The district court did not abuse its discretion in concluding that there was no just reason for delay due to the unique circumstances of these cases. The Does' cases closely parallel one another, and the district court's dismissal order is the same in each. Addressing this consolidated appeal now significantly enhances the efficiency of the litigation. The relatedness of these four cases, their early stage in litigation, the number of defendants involved, and the substantial discovery to be had are the kind of "special circumstances" that warrant appellate review. *See Ebrahimi*, 114 F.3d at 168. Accordingly, the district court did not abuse its discretion in finding no just reason to delay the appeal. Consequently, this Court has jurisdiction over the appeal under 28 U.S.C. § 1291 and we need

not reach the question of whether the district court properly certified its rulings as immediately appealable under Section 1292(b).

## III.    STANDARD OF REVIEW

This Court "review[s] an order granting a motion to dismiss with prejudice *de novo*, applying the same standards the district court used." *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1037 (11th Cir. 2008). As such, we must accept all factual allegations in the complaint as true and construe them "in the light most favorable to the plaintiff." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, a plaintiff must allege sufficient facts that, "accepted as true, [] 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## IV.    DISCUSSION

### A.    *Defining a Beneficiary Claim*

At its core, this is a case about statutory interpretation. We begin that task, as always, with the common and ordinary meaning of the words used in a statute. *See Consol. Bank, N.A. v. U.S. Dep't of Treasury*, 118 F.3d 1461, 1464 (11th Cir. 1997) ("In the absence of a statutory definition of a term, we look to the common usage of words for their meaning."); *see also CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001) (stating that,

when the statutory text is unambiguous, this Court should begin and end its analysis with the text's plain meaning).

The Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1591, prohibits the sex trafficking of children or adults by force, fraud, or coercion. In addition to that criminal prohibition, the Act provides sex-trafficking victims with a civil cause of action against "the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595(a). For purposes of this appeal, we assume that the Does are sex-trafficking victims under the TVPRA. The only question for this Court, therefore, is whether the Does have plausibly alleged that the franchisors are liable. The Does allege that the franchisors are liable because they knowingly benefited from participation in a venture that they should have known violated Section 1591(a). That allegation can be broken down into four component parts: that the franchisors (1) knowingly benefited (2) from participating in a venture; (3) that venture violated the TVPRA as to the Does; and (4) the franchisors knew or should have known that the venture violated the TVPRA as to the Does. We address each part in turn.

The parties do not meaningfully dispute the first element, and we likewise have little difficulty in deciding what "knowingly benefits" means. "Knowledge" is "[a]n awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact." *Knowledge*, Black's

Law Dictionary (11th ed. 2019). And Section 1595(a) explains that a defendant may benefit "financially or by receiving anything of value." Accordingly, a plaintiff like the Does must allege that the defendant knew it was receiving some value from participating in the alleged venture.

Most of the parties' dispute concerns the second element—to knowingly benefit *from participating in a venture*. The franchisors argue, and the district court held, that we should incorporate the definition of "participation in a venture" from the criminal provisions in Section 1591. Section 1591(e)(4) defines "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)," which criminalizes "commercial sex act[s]" of minors or obtained through threat or force. For the following reasons, we disagree with transposing the statutory definition from this criminal section to the civil cause of action.

First, although we usually presume that Congress intends phrases in the same statute to mean the same thing, *see, e.g.*, *Law v. Siegel*, 571 U.S. 415, 422 (2014), the text of this statute overcomes that presumption. Section 1591 clearly states that its definition of "participation in a venture" applies only "[i]n this section." 18 U.S.C. § 1591(e). That is, by its plain terms, the definition applies only to the phrase as used in Section 1591 of the statute. That limited application makes sense; Section 1591 carries criminal penalties, whereas Section 1595 does not. Presumably because it imposes criminal liability, Section 1591(a) includes a scienter requirement that does not appear in Section 1595(a)—a defendant must *know*

"that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a).

Second, the civil provisions of Section 1595(a) make no sense with Section 1591's definition of "participation in a venture" read in. A plaintiff can sue a perpetrator of sex trafficking—*i.e.,* someone who has violated the criminal statute—without resort to the beneficiary cause of action. To state a beneficiary claim, however, a plaintiff must allege that the defendant "knowingly benefit[ted], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." *See* 18 U.S.C. § 1595(a). If we replace "participation in a venture" with Section 1591(e)(4)'s "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)," we get a nonsense sentence: benefited "from [*knowingly* assisting, supporting, or facilitating a violation of subsection (a)(1)] which that person knew *or should have known* has engaged in an act in violation of this chapter." In other words, the franchisors' formulation requires a plaintiff to prove that the defendant knowingly facilitated a violation, making the "should have known" language superfluous.

Instead of incorporating Section 1591(e)(4)'s idiosyncratic definition of "participation in a venture," we interpret that phrase in Section 1595(a) according to its plain meaning. The ordinary meaning of "venture" is an undertaking or enterprise involving risk and potential profit. *See Venture*, Black's Law Dictionary (11th ed.

2019) ("[a]n undertaking that involves risk; esp., a speculative commercial enterprise"); *Venture*, Oxford English Dictionary 520 (2d ed. 1989) ("[a]n enterprise of a business nature in which there is considerable risk of loss as well as chance of gain; a commercial speculation"). The ordinary meaning of participate or participation is to take part in or share with others in common or in an association. *See Participation*, Black's Law Dictionary (11th ed. 2019) ("[t]he act of taking part in something"); *Participate*, Oxford English Dictionary 268 (2d ed. 1989) ("[a] taking part, association, or sharing (with others) in some action or matter"). Accordingly, we conclude that the phrase "participation in a venture" requires that the Does allege that the franchisors took part in a common undertaking or enterprise involving risk and potential profit.

The third element of the Does' claim is that the venture in which the defendant participated and from which it knowingly benefited must have violated the TVPRA as to the plaintiff. The TVPRA criminalizes various acts, but the Does specifically premise their Section 1595(a) beneficiary claims on violations of Section 1591(a). Section 1591(a) makes it a crime to "knowingly" harbor or solicit a person for commercial sex while "knowing . . . that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a). Section 1591(a) also prohibits anyone from knowingly "benefit[ting], financially or by receiving anything of value" from "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." *Id.* at 1591(a)(2) & (e)(4).

Consequently, the Does must plead sufficient facts to plausibly allege that the venture in which the franchisors participated committed one of these crimes against them.

Fourth, the defendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated the TVPRA as to the plaintiff. Section 1595(a) requires that the defendant "knew or should have known [that the venture] has engaged in an act in violation of this chapter." Knowledge requires "[a]n awareness or understanding of a fact or circumstance." *Knowledge*, Black's Law Dictionary (11th ed. 2019). Constructive knowledge, on the other hand, is that knowledge which "one using reasonable care or diligence should have." *Constructive Knowledge*, Black's Law Dictionary (11th ed. 2019). Thus, the franchisors may be liable under the TVPRA if they have either actual or constructive knowledge that the venture in which they participated and from which they benefited violated the TVPRA as to the Does.

In defining these elements according to their plain meaning, we depart from some courts and agree with others. The district courts are all over the map on the meaning of these terms. *See, e.g.*, *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F.Supp.3d 921, 937 (D. Or. 2020) (collecting cases). But most district courts, like us, have rejected the idea that a court can transpose the definition of "participation in a venture" from the criminal section to the civil cause of action. *See, e.g.*, *A.B. v. Marriott Int'l, Inc.*, 455 F.Supp.3d

171, 183 (E.D. Pa. 2020). As for our sister circuits, only the First Circuit has addressed a Section 1595(a) beneficiary claim. *See Ricchio v. McLean*, 853 F.3d 553, 556–58 (1st Cir. 2017). And we think our reasoning is consistent with the disposition there. In *Ricchio*, the plaintiff sued the owner and live-in operators of a hotel where she was held hostage and sexually abused. *Id.* at 556. The First Circuit held that the plaintiff had plausibly alleged that the operators' association with the plaintiff's sex trafficker was a "venture" because her abuser "had prior commercial dealings with the [operators], which the parties wished to reinstate for profit." *Id.* at 555. Considering these dealings, the plaintiff also plausibly alleged that, by renting a room to the abuser, the operators were "associating with him in an effort to force [the plaintiff] to serve their business objective." *Id.* We agree that these kinds of allegations would establish a hotel operator's participation in a venture with a sex trafficker.

In short, we hold that, to state a beneficiary claim under Section 1595(a), a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

B.    *The Does' Beneficiary Claims Against the Franchisors*

Having defined the elements of a beneficiary claim, we now consider whether the Does have stated such a claim against these three hotel franchisors for the operation of these two hotels. We conclude that they have not.[1] Specifically, the Does have not plausibly alleged that these three hotel franchisors participated in a venture that violated the TVPRA.

We begin with the venture the Does say that the franchisors participated in. Throughout their complaints, the Does alleged that the franchisors participated in "sex trafficking ventures." On the first page of the complaints, they referred to "sex trafficking ventures" that the "Defendants were essential to the success of." On the next page they alleged that "[e]ach of Defendants' hotels hosted one or more hotel sex trafficking ventures." They stated that "several Defendants' agents and employees actively participated in sex trafficking ventures and were rewarded for doing so." They subtitled the allegations against each franchisor as "The Suburban Extended Stay (Chamblee) Sex Trafficking Venture" and "The Microtel (Atlanta) Sex Trafficking Venture." Over and over, they

---

[1] The Does appeal the district court's decision to strike general allegations about sex trafficking from their amended complaints. For purposes of considering the dismissals on appeal, we consider all allegations in the amended complaints, including those that the district court struck. Even considering those allegations, we conclude that the district court did not err in granting the motions to dismiss.

repeated this phrase: sex trafficking venture. In fact, every single reference to a "venture" in the complaints refers to a "sex trafficking venture." Then, the Does alleged that the franchisors profited from this "sex trafficking venture" through room fees and should have known that this venture victimized them in violation of the TVPRA.

So we must determine whether the Does plausibly alleged that the franchisors took part in the common undertaking of sex trafficking with hotel employees, management, owners, and sex traffickers. On this complaint, they did not. The Does alleged that Wyndham "licenses its hotel brands, including Microtel . . . to franchisees who pay Wyndham royalty and other fees based on a percentage of their gross room revenue." They alleged that Choice "received a percentage of the revenue generated by the operation of the Suburban Extended Stay (Chamblee), including a percentage of the revenue generated for the rate charged on the rooms in which" each Doe was trafficked. They also alleged that each of the franchisors "owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms" at the hotels. These allegations may suggest that the franchisors financially benefitted from renting hotel rooms to the Does' sex traffickers. But they do nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA—*i.e.,* the alleged sex trafficking ventures.

The Does also alleged that the franchisors investigated the individual hotels, took remedial action when revenue was down, read online reviews mentioning prostitution and crime occurring generally at the hotels, and controlled the training of managers and employees who were allegedly involved in facilitating sex trafficking at the hotels. Again, these allegations are insufficient to state a claim. None of these allegations suggest that the franchisors participated in an alleged common undertaking or enterprise with the Does' sex traffickers or others at the hotel who violated the statute.

Perhaps recognizing their tenuous legal position, the Does allege something different on appeal: that the franchisors participated in commercial ventures to operate hotels and that those hotel ventures violated the statute. There are two problems with that new theory. First, it is incompatible with the allegations in the Does' complaints. Again, every time the complaints refer to ventures, they refer to "sex trafficking ventures." And those ventures were alleged to include the sex traffickers themselves as participants. On the other hand, there are no nonconclusory allegations in the complaint about the franchisors' business relationship with anyone else involved in operating these hotels. Second, the Does failed to present this theory to the district court when given the opportunity. This was no oversight. The district court granted the Does leave to amend their complaints, yet they still alleged "sex trafficking ventures." The district court then dismissed the franchisors without prejudice, specifically so that the Does could later amend their complaints to add them back. The Does chose instead

to request that dismissal be entered with prejudice. We will not consider this theory for the first time on appeal after the Does were given ample opportunity to present it in the district court. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

In short, to participate in a venture under Section 1595(a), a defendant must take part in a common undertaking involving risk or profit. The Does chose to frame the ventures at issue as sex trafficking ventures in their amended complaints. Yet they have provided no plausible allegations that the franchisors took part in the common undertaking of sex trafficking. Their only allegations as to the franchisors' knowledge or participation in those sex trafficking ventures are that the franchisors sent inspectors to the hotels who would have seen signs of sex trafficking and that they received reviews mentioning sex work occurring at the hotels. But observing something is not the same as participating in it. Accordingly, the Does' Section 1595(a) beneficiary claims against the franchisors fail.

## C.    *State Law Claims*

We also affirm the district court's dismissal of the Does' Georgia RICO Act and negligence claims against the franchisors.

The Does argue that the district court erred by failing to accept their allegations when dismissing their RICO claims. And they argue that they plausibly alleged the predicate acts of prostitution and sexual servitude. Finally, they argue that the district court applied an incorrect standard in determining that they had failed to

plausibly allege a criminal agreement. As part of that argument, the Does explain that to establish an agreement for purposes of a RICO conspiracy, they need only allege "a mere tacit understanding between two or more people that they will pursue a particular criminal objective." And they continue that they plausibly alleged such "a tacit understanding between the Franchisors and their franchisees to turn a blind eye to allow and profit from the sex trafficking at the Microtel and SES." We disagree.

Accepting all allegations in the amended complaints, the Does have failed to plausibly allege a Georgia RICO claim. First, the Does alleged that the franchisors violated O.C.G.A. §§ 16-14-4(a) and (c). Section 16-14-4(a) makes it illegal "for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." A "pattern of racketeering activity" means "[e]ngaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics." O.C.G.A. § 16-14-3(4)(A). A "racketeering activity" is the commission, attempted commission, solicitation, coercion, or intimidation of another "to commit any crime which is chargeable by indictment under" Georgia law. *Id.* at § 16-14-3(5)(A). And "[a]ny person who is injured by reason of

any violation of Code Section 16-4-4 shall have a cause of action" against the violator. *Id.* at § 16-14-6(c).

The Does alleged that the franchisors "as parties to the crime, and as co-conspirators" subjected them to sexual servitude in violation of O.C.G.A. § 16-5-46(c)(1) "when they were coerced into performing or conducting sexually explicit conduct for which something of value, directly or indirectly, was given, promised to, or received by someone." That "threadbare recital[]" of the elements of "sexual servitude" is insufficient to plausibly allege a violation of Section 16-5-46(c)(1). *See Iqbal*, 556 U.S. at 663.

The Does also alleged that the franchisors committed false imprisonment, keeping a place of prostitution, pimping, and pandering, in violation of Georgia law. Each allegation contained no more than a threadbare recital of the elements of the crimes supported by conclusory allegations. Accordingly, the Does failed to plausibly allege the predicate acts necessary to support their RICO claims. The district court did not err in dismissing the Does' substantive RICO claims against the franchisors.

Section 16-14-4(c) makes it illegal "for any person to conspire or endeavor to violate" Section 16-14-4(a). To violate Section 16-14-4(c), one must either commit an overt act to "effect the object of" the endeavor or conspiracy or a co-conspirator must commit such an overt act. *See* O.C.G.A. § 16-14-4(c)(1)–(2). The Does alleged that the franchisors conspired "to acquire money through a pattern of racketeering activity." But the pattern of racketeering activity on which they predicate their conspiracy counts relies on the

same threadbare allegations as the substantive RICO claims. Because those allegations are insufficient to plausibly allege any RICO violation, the district court also correctly dismissed the Does' conspiracy counts.

Finally, the district court dismissed the Does' negligence claims after concluding that the amended complaints merely alleged ordinary franchise relationships "which do not give rise to vicarious liability against franchisors." A franchisor that "maintain[s] no control over the operation of the [franchise]" and "simply provide[s] supplies and consultation services" to franchisee employees does not owe a duty to patrons of the franchise. *Cobb v. Popeye's, Inc.*, 373 S.E.2d 233, 235 (Ga. Ct. App. 1988). Such a duty only arises if the franchisor retains a right to control the day-to-day operations of the franchise. *See Schlotzky's, Inc. v. Hyde*, 538 S.E.2d 561, 562 (Ga. Ct. App. 2000).

The Does allege that the franchisors "owned and/or managed and/or operated and/or oversaw and/or controlled the operation" of their hotels and that they "had supervisory control over" the hotels. Those allegations are mere recitations of the requirements for franchisor liability, and the Does do not allege any facts to support them. Accordingly, they have failed to plausibly allege that the franchisors owed the Does a duty. *See Iqbal*, 556 U.S. at 663.

The Does' argument that the franchisors ratified the acts of the franchisees also fails. Under O.C.G.A. § 10-6-1, a principal-agent relationship arises when one party "subsequently ratifies the acts of

another in his behalf." A party ratifies the acts of another by accepting and retaining the benefits of the other party's alleged unauthorized act. *DaimlerChrysler Motors Co. v. Clemente*, 668 S.E.2d 737, 746 (Ga. Ct. App. 2008). But the principal must also have "full knowledge of all the material facts" for that acceptance and retention to constitute ratification. *Hyer v. Citizens & S. Nat'l Bank in Macon*, 373 S.E.2d 391, 393 (Ga. Ct. App. 1988).

The Does did not plausibly allege that the franchisors had "full knowledge of all the material facts" regarding the franchise employees' actions in assisting and facilitating sex trafficking. The Does argue otherwise based on their allegations that the franchisors sent inspectors to the hotels "while hotel employees either assisted or at the very least, turned a blind eye" to the trafficking occurring there. But that allegation alone does not rise to the level of plausibly alleging the franchisors' full knowledge of *all material facts*. Accordingly, the Does did not plausibly allege that the franchisors ratified the franchise employees' actions, and the district court did not err in dismissing the negligence claims.

## V.    CONCLUSION

Applying the plain meaning of Section 1595(a) to all allegations in the amended complaints, the Does failed to plausibly allege a violation of that section. Nor have the Does plausibly alleged a violation of state law. Accordingly, the district court's grant of the franchisors' motions to dismiss is **AFFIRMED**.

Because we conclude that jurisdiction is proper under 28 U.S.C. § 1291, we **DENY** the Does' petitions for permission to appeal under Section 1292(b) as moot.

JORDAN, CIRCUIT JUDGE, CONCURRING.

I join the court's opinion and write separately to emphasize some aspects of our decision.

First, our opinion addresses the plaintiffs' TVPRA "beneficiary" claims against franchisors which do not operate or manage the hotels at which sex trafficking allegedly occurred. *See* 18 U.S.C. § 1595(a). I agree that the allegations here are insufficient given the plaintiffs' assertion of (and reliance on) a "sex trafficking venture." *See, e.g., E.S. v. Best Western Int'l, Inc.*, 510 F.Supp. 3d 420, 427–28 (N.D. Tex. 2021); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F.Supp. 3d 147, 153–54 (E.D.N.Y. 2020). But, as the court explains, similar claims against those who own, operate, or manage the hotels in question (e.g., franchisees) would withstand a Rule 12(b)(6) motion to dismiss. *See, e.g., Ricchio v. McLean*, 853 F.3d 553, 555–57 (1st Cir. 2017); *S.Y. v. Naples Hotel Co.*, 476 F.Supp. 3d 1251, 1256–57 (M.D. Fla. 2020).

Second, the participation element of a "beneficiary" claim under § 1595(a) does not require that the defendant in question have participated in the sex trafficking act itself. *See, e.g., S.Y.*, 476 F.Supp. 3d at 1256. Instead, as the court explains, "participation in a venture" requires only that a defendant take part in a common undertaking or enterprise involving risk and potential profit.